27 C.C.P.A. (Patents)

## In re HEWITT.
### Patent Appeal No. 4160.

Court of Customs and Patent Appeals.
Dec. 4, 1939.

Harry F. Riley, of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellant here seeks review of the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner denying patentability of two claims numbered, respectively, 8 and 12 in

his application for patent for a method of operating declination indicators in the drilling of wells, particular emphasis being placed on oil wells.

The claims read:

"8. A method of ascertaining the declination of a well bore within which a drill string and a drill bit are placed which consists in raising the drill string and drill bit until a desired length of drill hole occurs below the drill bit, thereafter lowering a magnetic type of declination instrument through the drill string and drill bit and into the free section of drilled hole therebeneath and beyond the zone of magnetic influence of the bit upon the magnetic declination instrument, maintaining said declination instrument within the hole at said point until a reading has been obtained, and thereafter removing the instrument from the hole."

"12. A method of determining the declination of a well bore without removing the drill string and drill bit from the well, said bit being formed with a central passageway therethrough, which method consists in elevating the drill string and the drill bit within the drill bore to a desired height above a point at which a survey is to be made, thereafter lowering a magnetic recording declination instrument through the drill string and the drill bit upon a flexible supporting element, the instrument being lowered into the well until it is beyond the magnetic influence of the ferrous metal of the drill bit and the drill string, the lowering operation continuing until a sufficient length of supporting element has been paid out to permit the instrument to assume a longitudinally aligned position against the low side of the drill bore, then taking a declination reading with the instrument and thereafter withdrawing the instrument from the well through the drill bit and the drill string."

The rejection was based on lack of invention over the disclosures of prior art shown in three patents, viz.: Macgeorge, 281,772, July 24, 1883; Stokes, 1,671,136, May 29, 1928; Baker, 1,793,894, Feb. 24, 1931.

It appears that prior to appellant's claimed invention it was the common practice in taking declination readings with instruments having a magnetic element to remove the entire drill string, consisting of metal tubes or pipes, and the drill bit attached to the lower end of the lowest tube from the bore and then lower the declination instrument to the desired point for securing the record. After this the instrument would be withdrawn and the drill string and bit reintroduced to continue the boring operation. This process consumed much time and labor, especially when the wells reached great depths.

By appellant's method, when a reading is desired, the string and bit, instead of being entirely withdrawn, are raised only a relatively short distance in the bore and the declination instrument, enclosed in a carrier, is lowered through the hollow drill string and through a central opening in the bit, the declination recorded and the instrument withdrawn through bit and string for inspection. Since the string and bit are of ferrous metal and the instrument contains a magnetic element, caution must be exercised to have a space in the bore below the bit sufficiently long to insure that the instrument will be at a point in the bore beyond the influence of the ferrous metal.

By this process it would appear that much time and labor are saved.

The structural elements involved, so far as the record shows, are old in the art, and the claims are limited to the method described.

Appellant regards claim No. 8 as being generic, but the same general principle of method is common to both claims and they stand or fall together.

The findings of the tribunals of the Patent Office relative to the disclosures of the prior art cited are not in serious dispute. The statement of the examiner relative to these is somewhat more elaborate than that of the board, and for this reason we quote it:

"The prior art as exemplified by MacGeorge shows that from the earliest development in this art, it has been the practice to place the magnetic declination instrument in a carrier connected at its lower end to a core extractor or sampling tool. In use the drill string was entirely removed from the bore hole and the tool and surveying instrument lowered by a string of rods r'. After the core was freed the instrument was removed from the bore hole and the record obtained. This record was free from the magnetic influence of the drill string, but at the expense and labor of entirely removing the drill string, which was considerable.

*     *     *     *     *     *

"Subsequently, as indicated by Baker and Stokes, it became the practice to obtain

samples by the use of core tools which were either permanently attached to the drill string (Baker) or independently removable from the drill string although coacting with the same at the time the core or sample was taken (Stokes).

"And furthermore, in these types of core samplers which extended beyond the lower end of the drill string it remained the practice as indicated by Baker to provide a chamber for carrying a magnetic surveying instrument.

"And although Stokes does not show such an instrument carrier incorporated in his sampling tool which as disclosed is readily raised and lowered a considerable distance beyond the end of the drill string, nevertheless, he contemplated other tools would be supported by his raising and lowering carrier. * * *"

After paraphrasing the substance of the foregoing, the board in its decision said:

"While the references cited do not appear to fairly anticipate the claims on appeal, it seems to us that the introduction of a declination instrument through a hollow drill stem is a matter of expediency rather than invention. Most drilling operations involve the use of tools which would preclude the insertion of a measuring instrument in accordance with the method claimed. If a hollow drill and stem is being used, such, for instance, as that shown in the Stokes patent, it seems to us that it would occur to a worker in the art that a measuring instrument might be introduced through the stem and tool without completely withdrawing the same. It is well known that the presence of metal or ore bodies tends to disturb the readings of a compass. We therefore also think it obvious to sufficiently withdraw the drill to remove this cause of disturbance."

■ So, the real gist of the decision appealed from is not to the effect that the prior art discloses appellant's method—it being expressly stated that the references "do not appear to fairly anticipate the claims on appeal"—but that, in view of such art, the evolvement of such method did not present an inventive concept.

We are in harmony with this conclusion.

The authorities cited by counsel for appellant have been quite carefully examined but we are of the opinion that appellant could not reasonably hope, upon the basis of such authorities, that the courts would sustain the patent he seeks if it were granted him.

■ To what extent, if at all, others may now be practicing the method which appellant describes and claims we are not advised, but it is clear that if he has not made an invention he should not be entitled prima facie to monopolize the field against other users. The patent laws insure protection for invention only. If there were an element of doubt it would be proper to resolve such doubt in favor of appellant, but we think there is no element of doubt in this case.

It may be conceded, as is claimed by appellant, that "the [reference] patents absolutely make no mention of passing a magnetic declination instrument through a drill stem and a drill tool to a position beyond the zone of magnetic influence of the ferrous metal of the drill string and the drill bit for obtaining an accurate reading of the declination of a well bore," but this is unimportant unless the conception of doing this involved invention.

The Stokes patent concededly discloses the passing of a tool through the drill stem and the Macgeorge patent discloses the use of a magnetic instrument for the purpose of taking declination readings. We are unable to discern wherein it required invention to pass the declination instrument, as other tools were passed, through the stem, nor can we conceive of it being inventive to adjust the various mechanisms involved so that the magnetic element of the declination instrument would be beyond the influence of the metal tubes and bit. Even tyros, to say nothing of skilled persons, have, and for centuries have had, knowledge of the fact that ferrous metals interfere with the functioning of magnetic organisms within limits of space, and have known that to prevent such interference there must be a sufficient distance between the two to nullify that influence. Appellant, in consequence of the law of nature, and compelled thereby if his method was to be fruitful, did the obvious thing and nothing more. He defines no distance as critical (probably in the art involved it would be impossible so to define a distance); hence his teaching amounts to nothing more than that well drillers observe the law of nature and do the thing required by such law.

The decision of the Board of Appeals is affirmed.

Affirmed.